UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **D L Star LLC** | **CIVIL ACTION NO. 14-952** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **ROYAL SEAL CONSTRUCTION INC** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Before the Court is Defendant's Motion for Summary Judgment Seeking Dismissal of the Claims of LD Star, Inc., and JWM of Louisiana, Inc. [Record Document 53.] For the reasons announced below, the Court **GRANTS** the Defendant's motion.

### I.   Background

All Plaintiffs seek damages for the allegedly substandard construction of a building designed to house two restaurants, a Carl's Jr. and an Orange Leaf Yogurt. Initially, Plaintiff D L Star, LLC ("DL Star"), the owner of the building, sued Defendant Royal Seal Construction, Inc. ("Royal Seal"), its general contractor, alleging that Royal Seal breached the contract between these two parties to construct the building by, inter alia, failing to construct the building in accordance with the architect's specifications, which delayed completion of the building. See Record Document 1-2. DL Star also alleged Royal Seal was negligent in its construction of the building. Id. DL Star later filed an amended complaint joining as Plaintiffs the operators of the two restaurants located in the building: LD Star, Inc. ("LD"), which operates the Carl's Jr., and JWM of Louisiana, Inc. ("JWM"),

which operates the Orange Leaf Yogurt.  See Record Document 39.  In the amended complaint, LD and JWM allege that although they are not signatories to the construction contract between DL Star and Royal Seal, they are third party beneficiaries of the contract.  They further allege that as third party beneficiaries of Royal Seal's obligation to timely construct the building and as tort claimants for Royal Seal's negligence in constructing the restaurants, they are entitled to profits lost as a result of the restaurants' delayed opening.  Record Document 51, pp. 1-2, 9-10.[1]  Royal Seal seeks summary judgment against the claims of LD and JWM, arguing that (1) they are not third party beneficiaries to the construction contract and therefore have no remedy in contract and (2) Royal Seal owed them no duty of "reasonable care" to complete construction in a timely manner and therefore they have no remedy in tort.  Alternatively, Royal Seal argues that if there is a claim in tort, that claim has prescribed.  Record Document 53-2, pp. 7, 20, 25-30.

---

[1] The amended complaint attributes the following damages to all three Plaintiffs: "(1) increased costs of construction; (2) liens being filed on the Project; (3) the threat of additional liens and unpaid subcontractors; (4) lost profits and increased expenses due to delayed opening of the Carl's Jr. and Orange Leaf Yogurt; (5) increased costs and lost productivity resulting from construction mistakes and failure to supervise; (6) lost revenue due to delayed opening, and (7) other damages that will be proven at trial."  Record Document 51, pp. 9-10.  In its memorandum supporting summary judgment, Royal Seal interprets these allegations, as a matter of common sense, to mean that LD and JWM–non-signatories to the construction contract–are only asserting damages for lost profits as a result of the restaurants' delayed opening.  See Record Document 53-2, pp. 13-14.  LD and JWM concede as much in their opposition to summary judgment.  See Record Document 58, p. 6. ("LD and JWM then joined with DL Star . . . to recover from Royal Seal damages they sustained in the form of lost profits, delayed opening dates, and lost productivity as a result of Royal Seal's failure to timely and correctly complete the Project.").  Likewise, the declaration of J.W. Mikucki states that the damages that LD and JWM suffered were in the form of delay damages.  Record Document 58-1, p. 3.  The Court therefore proceeds as though LD and JWM only seek delay damages.

Neither the construction contract nor any other document related to the construction project mentions JWM.  The construction contract mentions LD once.  On the cover sheet of the construction plans,[2] LD is listed as the "Owner Contact" under a "List of Contacts" heading.  Record Document 58-3.  Elsewhere, the contract states that the new construction is "for the Restaurant known as: Carl's Jr. Restaurant No. 8223/Orange Leaf Yogurt" and names Carl's Jr. and Orange Leaf Yogurt on the physical address of the project.  Record Document 53-3, pp. 8, 12.  Another relevant portion of the contract is a provision that limits the "contractual relationships" created by the contract to DL Star and Royal Seal and appears to name the architect as a third party beneficiary.  Record Document 53-4, p. 1.  The provision states in pertinent part, "The Contract Documents shall not be construed to create a contractual relationship of any kind . . . between any persons or entities other than the Owner and Contractor.  The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties."  Id.

Outside of the contract, two other documents related to this construction project mention LD.  One document is undated, is of unknown origin, and indicates generally that LD will participate in a government tax rebate program.  Record Document 58-4.  Also, the minutes of a meeting held at the architect's office indicate that in addition to representatives of Royal Seal and the architect, J.W. Mikucki attended the meeting on

---

[2] The construction plans are part of the construction contract.  See Record Document 53-3, p. 9 ("Drawings, Specifications . . . form the Contact, and are as fully a part of the contract as if attached to this Agreement or repeated herein.").

behalf of LD. Record Document 58-5. J.W. Mikucki ("Mikucki Sr.") and his son, John Mikucki Jr., are both principals of all three Plaintiffs in this suit.[3] Record Documents 51-1, 51-2, and 51-3. John Mikucki Jr. signed the construction contract on behalf of DL Star. Record Document 53-3, p. 14.

Mikucki Sr. states in his declaration that he formed DL Star for the specific purpose of owning the building housing the Carl's Jr. and the Orange Leaf Yogurt; LD for the specific purpose of operating Carl's Jr.; and JWM for the specific purpose of operating the Orange Leaf Yogurt. Record Document 58-1, p. 1. Mikucki Sr. asserts that the building was not planned, drawn, or built for any purpose other than to house a Carl's Jr. and Orange Leaf Yogurt. Id. at 2. According to Mikucki Sr., the contract required completion of the building in 100 days because this timetable matched those of JWM and LD in preparing to open the Carl's Jr. and Orange Leaf Yogurt.[4] Id. Mikucki Sr. further alleges that Royal Seal was informed that entities other than DL Star would operate the Carl's Jr. and Orange Leaf Yogurt and was in possession of all the documents discussed above that reference LD. Id. at 3. Finally, according to Mikucki Sr., Royal Seal's failure to complete construction of the building within the 100-day schedule delayed the opening of both restaurants by more than a month, causing LD and JWM to incur lost profits and other

---

[3] Neither party has asserted that any of the Plaintiffs are alter egos of one another.

[4] Plaintiffs make no allegation that LD and JWM are lessees of the building nor do they include in the record any lease between DL Star and LD or JWM. Presumably, there is some contractual relationship between the owner of the building and the operators of the businesses located in the building.

delay damages for that period.  Id.

## II.     Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

### III. Analysis

    A. <u>LD and JWM as Third Party Beneficiary's of the Construction Contract</u>

Royal Seal argues that it is entitled to summary judgment on LD's and JWM's contractual claims because they are not third party beneficiaries of the construction contract. Record Document 53-2, pp. 24-30. This Court agrees. The Louisiana Civil Code recognizes the creation of a contractual benefit for a third party, referred to as a stipulation *pour autrui*, but does not provide an analytic framework for determining when a contract creates a stipulation *pour autrui*. See La. Civ. Code art. 1978. However, the Louisiana Supreme Court has determined there are three criteria to consider when determining whether contracting parties have provided a benefit for a third party: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided [to] the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." <u>Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary</u>, 2005-2364 (La. 10/15/06); 939 So. 2d 1206, 1212. Although stipulations *pour autrui* are favored in Louisiana, <u>Andrepont v. Acadia Drilling Co.</u>, 231 So. 2d 347, 350 (1969), they are not presumed and the party claiming the benefit of the stipulation bears the burden of proof, <u>Joseph</u>, 939 So. 2d at 1212.

    1. *Whether the Stipulation Is Manifestly Clear*

The construction contract must clearly demonstrate an intent to benefit LD and JWM. <u>See id.</u> ("The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent a clear manifestation, a party

claiming to be the third party beneficiary cannot meet his burden of proof." (citing Paul v. Louisiana State Employees' Grp. Ben. Program, 1999-0897 (La. App. 1 Cir. 5/12/00), 762 So. 2d 136, 141-42)). The construction contract does not need to state the names of LD and JWM if the intent to benefit them can be inferred "from a consideration of the agreement as a whole." See Kessler v. Popich, 240 Fed. App'x 618, 621 (5th Cir. 2007) (citation omitted). In Paul, the court held that an agreement between a lab and a human resources company to test urine samples of a third party, without more, did not demonstrate any intent to benefit the third party where that third party stood to gain employment if the result of the test were negative. 762 So. 2d at 142.

      The construction contract does not clearly demonstrate an intent to benefit LD and JWM. First, the Plaintiffs cite no caselaw that extends the contractual obligation of a contractor to potential occupiers of a building under the language of this construction contract. Second, the clause in the contract limiting the contractual relationships to DL Star and Royal Seal, when read in conjunction with the following sentence granting the architect the right to sue under the contract, is nearly dispositive of a lack of a intent to create a stipulation in favor of LD and JWM. Again, these provisions state: "The Contract Documents shall not be construed to create a contractual relationship of any kind . . . between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties." Record Document 53-4, p. 1. LD and JWM argue that the first sentence invites some ambiguity as to whether "a

contractual relationship of any kind" means more narrowly the parties to the contract or more broadly any person who could assert claims to the contract, such as a third party beneficiary.[5] The second sentence, however, resolves this potential ambiguity in favor of the latter interpretation. The use of the word "however" in the second sentence indicates that what follows stands as an exception to that which preceded it. And what follows indicates that the architect is entitled to the benefits that accrue to it under the contract, although it does not impose any reciprocal duties on the architect. See id. Thus, the second sentence creates a stipulation *pour autrui* for the architect, and because of the word "however," this stipulation is an exception to the general rule that preceded it. The sentence that preceded it, the clause limiting contractual relationships to DL Star and Royal Seal, is therefore fairly interpreted as prohibiting stipulations *pour autrui*.

The one, glancing reference to LD in the contract does not create an exception to the clause prohibiting stipulations *pour autrui*. Unlike the clause respecting the architect's rights, which states that the architect is entitled to the rights accruing to it under the contract, the reference to LD states nothing more than LD is the contact for the owner, DL Star. Compare id. at 1, with Record Document 53-2. Even in the absence of the clause prohibiting stipulations *pour autrui*, language in a contract indicating that a non-party acts as a contact, and therefore an agent, on behalf of a party would not manifest a clear intent to create a stipulation in favor of that non-party. The commonplace practice of identifying in a contract an entity or person who can speak on behalf a party accomplishes a different

---

[5] See Record Document 58, pp. 22-23.

purpose other than endowing that contact with the rights of a third party beneficiary.[6] Certainly, then, the lone reference to LD as a contact for the owner in the construction contract cannot overcome the force of the clause prohibiting stipulations *pour autrui*. Cf. Joseph, 939 So.2d at 1214 (holding that contract between a hospital and an incorporated physician group did not create a stipulation *pour autrui* in favor of individual physicians comprising the physician group even where the contract names one of those individual physicians).

The acknowledgment in the contract that its purpose was to construct a building that would house a Carl's Jr. and an Orange Leaf Yogurt is also insufficient to overcome the clause prohibiting stipulations *pour autrui*. Although courts do not require that an agreement name a beneficiary if the existence of a stipulation in favor of that beneficiary can be inferred from consideration of the agreement as a whole, see Kessler, 240 Fed. App'x at 621, they still face the burden of showing that there is a manifestly clear stipulation in their favor *in the agreement*, see Joseph, 939 So.2d at 1212. The construction contract indicates that Royal Seal was well aware that the purpose of the building was to house a Carl's Jr. and an Orange Leaf Yogurt. This fact is not in dispute. But the only inference of intent that can be drawn from this fact is that the parties knew

---

[6] The reference to LD as a contact for the owner also did not, as LD and JWM argue, transform LD into a party to the contract. See Record Document 52, pp. 20-21. LD and JWM assert that because "LD star is listed as the 'Owner,' on the cover sheet for the construction plans," LD was a party to the contract. LD was not listed as the owner on the contract; it was listed as the owner contact. As discussed above, non-parties are regularly listed as the contact for a party to the contract in their capacities as agents for the party. LD and JWM's contention that the listing of LD as an owner contact means that LD was a party to the contract is therefore without merit.

the franchisor brands associated with the building. Absent some expression in the contract, it does not evidence a manifestly clear intent to create a stipulation in favor of the operators of those franchises, whomever they may be.

Finally, LD and JWM argue that two other clauses of the contract counteract the effect of the clause prohibiting stipulations *pour autrui* and therefore create an ambiguity in the contract. One such clause respectively binds the assignees or successors of either party. Record Document 53-4, 19-20. The other clause states that rights and duties created by the contract "shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law." Id. at 20. Neither clause counteracts the clause prohibiting stipulations *pour autrui* nor does either clause create a stipulation in favor of LD or JWM. The first referenced clause would only counteract or conflict with a provision of the contract refusing to recognize the rights and obligations of assignees or successors. And neither LD nor JWM has asserted that they are the assignee or the successor of any party to the contract. The second referenced clause would only counteract or conflict with a provision of the contract that limited non-contractual rights and obligations, such as tort obligations. Furthermore, this clause alone does create any new contractual rights in favor of LD or JWM that are not contained elsewhere in the contract. These two clauses therefore have no bearing on the clause limiting stipulations *pour autrui* and thus do not create any ambiguity in the contract.

Because there is no ambiguity within the four corners of the contract as to whether it creates a stipulation in favor of LD and JWM, the remaining evidence in the record on

the intent of the parties is not probative of the parties' intent.  See La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").  The Plaintiffs argue that the construction contract created a stipulation in their favor because even though LD and JWM were not named as operators of the restaurants, Royal Seal knew that LD and JWM were the operators.  Even if this were true, i.e., even if Royal Seal knew that LD and JWM were the operators of the restaurants, this fact does not have any bearing on whether the construction contract created a "manifestly clear" stipulation in their favor because absent any ambiguity in the construction contract, the Court may not look beyond the four corners of the contract to determine the intent of the parties.  See id.

On the same basis, the Court's finding that the construction contract does not manifest a clear intent to create a stipulation in favor LD and JWM is not premature.  LD and JWM argue that a decision on the intent of the parties in creating a stipulation for them is premature because Royal Seal's motion was filed six months before the dispositive motion deadline, precluding the court from seeing additional evidence on intent that might be revealed in depositions.  Record Document 58, p. 28 (citing Lyxell v. Vautrin, 604 F.2d 18, 20 (5th Cir. 1979).  First, Lyxell does not support their argument because in that case, the question that the Fifth Circuit found was not ripe for summary judgment was whether there was the requisite intent to commit fraud and misrepresentation, not whether a contract manifested an intent to create a stipulation *pour autrui*.  See id.  Second, because there is no ambiguity on the face of the contract, any additional extracontractual evidence

would be just as irrelevant to the intent of the parties as the extracontractual evidence now before the Court is. See La. Civ. Code art. 2046. Specifically, the Plaintiffs point to two fact disputes which they contend it is necessary to resolve in order to infer Royal Seal and DL Star's contractual intent. These facts are Royal Seal's knowledge of the use of the building to house two franchise restaurants and the identity of the operators of those businesses. Plaintiffs contend that these two fact disputes are sufficient to defeat summary judgment. As to the purpose of the building, the contract indicates as discussed above that Royal Seal was well aware that the purpose of the building was to house a Carl's Jr. and a Orange Leaf Yogurt franchise. Thus, this fact is not in dispute. As to the identity of the operators of the restaurants, this fact is immaterial. Royal Seal may well have known that LD would operate one of the restaurants or that some third party would operate the restaurants. But in the presence of unambiguous language in the contract prohibiting stipulations *pour autrui* and in the absence of any "manifestly clear" language in the contract creating rights in favor of any third party business interest, this fact is immaterial.

Thus, for the reasons stated above, LD and JWM have not met their burden of proving that the stipulation in their favor is manifestly clear. See Joseph, 939 So. 2d at 1212.

2. *Whether there was Certainty as to the Benefit Provided to LD and JWM*

There must be certainty as to the benefit that the construction contract conveys to LD and JWM. See id. ("To create a legal obligation as to the beneficiary there must be certainty as to the benefit to accrue to the beneficiary." (quoting Berry v. Berry, 371 So.

2d 1346, 1347 (La. 1 Ct. App. 1979))). As stated above, the contract clearly identifies the purpose of the building–to house the two franchise restaurants. And, presumably, Royal Star had to know that *some* entities would operate those restaurants. Even if Royal Star knew that these entities were LD and JWM, the contract lacks any statement as to what benefit they would receive. No portion of the construction contract provides for occupancy by LD and JWM,[7] and no contractual relationship between the owner and LD or JWM is referenced in the contract. LD and JWM's primary complaint appears to be that because of the errors in following the plans, they were delayed in opening the restaurants. The contract contains a 100-day completion clause, but there is no mention of any benefit to anyone other than the owner that would arise out of this deadline. Thus, LD and JWM have not met their burden of proving that there was certainty as to the benefit convey to them.

### 3. *Whether the Benefit Was Incidental*

Finally, the construction of a building in which LD and JWM could operate their restaurants cannot be an incidental benefit of the construction contract. See Joseph, 939 So. 2d at 1212-13 ("[N]ot every promise, performance of which may be advantageous to a third person, will create in him an actionable right." (quoting Denson Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul. L. Rev. 18 (1936))). A benefit created by an agreement is not incidental where it "form[s] 'the condition or consideration' of a contract between others rather than being a mere incident of that

---

[7] The only specific contract provision dealing with occupancy identifies DL Star as the occupant. Record document 53-4, p. 14.

agreement." City of Shreveport v. Gulf Oil Corp., 431 F. Supp. 1, 4 (W.D. La. 1975). When a court determines whether the benefit was the condition or consideration of the contract, it must examine the relationship between the promisee and the third person and whether the contract was made to obtain the discharge of any legal obligation owed by the promisee to the third party. Id.

The benefits that JWM and LD derive under the contract are incidental. There is no evidence that DL Star owed LD or JWM an obligation to construct the building such that Royal Seal's promise to construct the building discharged DL Star of its obligation to them. See id. Instead, Royal Seal's promise to construct a building that would house a Carl's Jr. and an Orange Leaf Yogurt accrued fully to DL Star: the construction of the building allows it to lease the space and charge rent. LD and JWM have therefore not shown that their benefit under the contract, existence of a building that LD and JWM could lease in order to operate their restaurants, is not incidental to the contract. See Joseph, 939 So. 2d at 1212.

LD and JWM assert that State ex rel. Guste v. Simoni, Heck & Associates, 331 So. 2d 478 (La. 1976), shows that the benefit of the construction of a building for LD and JWM is not incidental to the construction contract. There, the Louisiana Office Building Corporation ("LOBC") contracted with an architectural firm to design an office building for LOBC's use. Id. at 481. The architectural firm, in turn, contracted with an engineer to design the electrical, plumbing, and HVAC systems in the building. Id. Alleging that defects in the building were caused by the engineer's services to the architect, LOBC sued

the engineer in contract on the theory that it was the third party beneficiary of the engineer's promise to provide the architectural firm with specifications for the utilities of LOBC's building. Id. at 481-82. The Louisiana Supreme Court held that LOBC could pursue its claims as a third party beneficiary against the engineer. Id. at 483-84. The court reasoned that the engineer's performance under the contract with the architectural firm was intended to benefit the owner of the building, LOBC. Id. at 482. This created concurrent obligations of the engineer such that he owed performance both to the architect and LOBC. The court also found that because of this concurrent obligation, LOBC need not go through the rigamarole of suing the architect, who would then sue the engineer; instead, LOBC could sue the engineer directly. Id. at 484.

Guste is distinguishable from this suit. There, the promisor (the engineer) agreed with the promisee (the architectural firm) to perform or fulfill a subset of an obligation originally owed by the promisee to the third party beneficiary (LOBC). See id. at 481. Here, there was no agreement between the promisor (Royal Seal) and the promisee (DL Star) to perform or fulfill a subset of any underlying obligation between DL Star and the purported third party beneficiaries (LD and JWM). Guste therefore does not support LD and JWM's argument that the benefit of the contract was not incidental.

Because LD and JWM have not been able to show that there is a stipulation in the construction contract in their favor that is manifestly clear or that the benefits that accrued to them under the contract are not incidental, they have failed to demonstrate that they are third party beneficiaries to the construction contract. See Joseph, 939 So. 2d at 1212.

Consequently, Royal Seal is entitled to summary judgment on LD's and JWM's contract claims.

### B. LD and JWM as Tort Claimants

Royal Seal argues that LD and JWM have no cause of action in tort because the scope of Royal Seal's duty as a contractor does not extend to these entities. In Louisiana, a contractor owes a duty to perform in a workmanlike manner free from defects attributable to either faulty materials or poor workmanship. Clement v. State Through Dep't of Transp. & Dev., 528 So. 2d 176, 179 (La. 1 Ct. App. 1988) (citing Marine Ins. Co. v. Strecker, 100 So. 2d 493 (1957)). But to whom does this duty extend? The scope of this duty is determined by a duty/risk standard. See Pitre v. Opelousas Gen. Hosp., 530 So. 2d 1151, 1155 (La. 1988). This standard asks whether the defendant's duty is intended "to protect each of the plaintiff's interests affected against the type of damage that did in fact occur." See id.

The interests of LD and JWM damaged in this suit, i.e., their expectation under the contract that the building would be completed in 100 days, are not within the scope of Royal's duty to build the restaurants free from defects attributable to either faulty material or poor workmanship. See id.; Clement, 528 So. 2d at 179. All of the tort cases cited by LD and JWM in their brief opposing summary judgment involve a plaintiff suing a contractor for personal injury or an owner suing a contractor for damage to the owner's property caused by a defect in the premises. See, e.g., Clement, 528 So. 2d at 177 (personal injury); Hollifield v. John J. Campbell Co., No. CIV. A. 09-490, 2010 WL 1853769,

at *1 (W.D. La. May 7, 2010) (same); Regions Bank v. Ark-La-Tex Water Gardens, L.L.C., 43,604 (La. App. 2 Cir. 11/5/08), 997 So. 2d 734, 736 (damage to property of owner); Cameron v. Bruce, 42,873 (La. App. 2 Cir. 4/23/08), 981 So. 2d 204, 206 (same); Kroger Co. v. L.G. Barcus & Sons, Inc., 44,200 (La. App. 2 Cir. 6/17/09), 13 So. 3d 1232, 1234 (same).

LD and JWM argue that the Court should extend Royal Seal's duty as a contractor to them because based on the facts recited above, Royal Seal knew of their involvement in this construction project. Record Document 58, p. 10. Even assuming this assertion were true, LD and JWM provide the Court with no authority permitting the Court to set precedent by extending the scope of duty of a contractor based solely on the fact that contractor was aware of who would occupy the building the contractor builds. LD and JWM allege they were injured because their expectations of a 100-day completion schedule set by the construction contract were not met; this injury is not within the scope of Royal Seals's tort duty as a contractor. Consequently, Royal Seal is entitled to summary judgment on LD's and JWM's negligence claims.[8]

### IV. Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment, Record

---

[8]Because the Court has determined that LD and JWM do not have negligence claims that are entitled to relief, the Court need not address the parties' arguments on whether LD's and JWM's negligence claims have prescribed.

Document 53, is hereby **GRANTED**. Accordingly, all the claims of LD Star, Inc., and JWM of Louisiana, Inc., in this matter are hereby **DISMISSED with prejudice**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 31st day of March, 2016.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE